[PHILADELPHIA, APRIL 2, 1831.]

## Case of the ROAD in the Borough of EASTON.

The court of Quarter Sessions of *Northampton* county, has no jurisdiction in laying out roads within the limits of the borough of *Easton*.

ON the return of a writ of *certiorari* to the court of Quarter Sessions of *Northampton* county, it appeared that a petition was presented to that court, at its session in *November*, 1828, by divers inhabitants of the borough of *Easton*, setting forth that they "laboured under great inconvenience for want of a road or highway, to lead from the north termination of *Front* or *Water* street, in the said borough, by the nearest and best route to intersect the road leading from the said borough, along the *Delaware*, to *John Sandt's* tavern." Viewers were accordingly appointed, who reported in favor of the road. On the application of adverse petitioners, reviewers were appointed, who reported against the road. Their report was made to the *August* sessions, 1829, and at the same sessions, a petition was presented, praying for a re-review, which was granted. At the *Novem-*

*ber* sessions, 1829, the re-reviewers made a report in favor of the road.

To this report, four exceptions were filed in the court of Quarter Sessions, of which it is now necessary to notice only the last, which was as follows, *viz.*

" The court of Quarter Sessions had no jurisdiction in the matter, the road laid out being entirely within the limits of the borough of *Easton.*"

On the 26th of *January*, 1830, the court of Quarter Sessions quashed the proceedings, for the reason assigned in this exception, without giving any opinion upon the other exceptions.

The opinion of the court was delivered by

Ross, J.—This case comes before the court on a *certiorari* to the court of Quarter Sessions of *Northampton* county. The Court of Quarter Sessions, on exceptions filed, decided that they had no jurisdiction of the matter. Conceiving that the road laid out by the viewers appointed for that purpose, was entirely within the limits of the borough of *Easton*, they, on the 26th of *January*, 1830, quashed the proceedings. The complainants have assigned, for error, that the court erred in supposing that they had no jurisdiction in laying out roads within the limits of the borough. The only question, therefore, presented for the determination of this court, is, whether the court of Quarter Sessions has been divested of such jurisdiction by the charter of incorporation.

The town of *Easton* was first incorporated by the act of the 23rd of *September*, 1789. No provision was contained in this act, to prevent the Quarter Sessions laying out roads within the limits of the borough ; but by an act of the 19th of *March*, 1828, enacted upon the application of the inhabitants, the former act was *entirely* altered and changed, except as respects the extent of the boundaries. By the 17th section thereof, it is provided, that " so much of the act entitled an act for erecting the town of *Easton*, in the county of *Northampton*, into a borough, and for other purposes, therein mentioned, and of the *general road law*, as may have heretofore authorised the election of supervisors, and the assessing and collecting of *road taxes* within the said borough, and of any other acts of assembly as are altered, or supplied, or amended by this act, be, and the same is hereby repealed." This section repeals, in express words, the power of the court of Quarter Sessions to appoint viewers, and to lay out roads within the borough, only so far as the exercise of that power is supplied, altered or amended by the provisions of the act of incorporation. How far, then, are the provisions of this act inconsistent with the provisions of the general road law ? It appears to me, from an attentive consideration of the act, that it is so far inconsistent with the provisions of the road law, as in effect to repeal that law within the borough of *Easton*. By the 14th section of the act, the town-council

(Easton Road Case.)

are directed to cause an accurate survey of the public square, and of the several roads, streets, lanes, and alleys within the said borough, to be made, and drafts thereof to be made and recorded; and on hearing any objection which may be made by any inhabitant, being a qualified voter of said borough, on some day appointed for that purpose, shall adjudge and determine whether any, and what alterations shall be made therein, and shall direct one of the drafts or plans, authenticated by the chief burgess and town clerk, under the seal of the corporation, to be recorded, &c. and thenceforth the public square, and all the streets, roads, lanes, and alleys therein contained, shall be forever deemed, adjudged, and taken as public highways, and the said *survey so returned and recorded, shall remain unalterable.* This survey has been made and returned. Thus the town-council were authorised to decide whether any alteration was neces-. sary in the roads, before making a return of the survey and draft, which was directed to be made and recorded. The decision of the council, when once made, was to be unalterable. The court of Quarter Sessions was thus restricted from exercising any control over the same. This was essential to the peace and prosperity of the borough. They, who were entrusted to exercise the power of making an accurate survey and draft of the several roads, streets, &c. requisite for the accommodation of the citizens, were certainly more competent to judge and decide, than a view appointed by the court from the adjacent townships. An unalterable plan, with the necessary streets, &c. was calculated to give stability to the rights of property, and to create a confidence in the owners thereof, that they might with safety improve the same, without the danger of innovations and alterations so destructive of their best interests.

That this court is right in their construction of this act, is still further evident from an examination of the other sections of it. By the seventh section, the town council are invested with the power of appointing *street and road commissioners,* of improving, repairing and keeping in order and regulating the streets, roads, lanes, alleys and highways, and with power to assess, apportion, and appropriate such taxes, as shall be necessary for carrying the rules and ordinances into complete effect. And by the twelfth section, an appeal from the assessment may be made to the chief burgess and two qualified voters, being inhabitants of the borough, who are authorised to remedy any grievance, that may occur in imposing the tax. The provisions of these sections are all inconsistent with the general road law: not only the power of appointing road-commissioners, and of keeping in order and regulating the streets, but also the mode of assessing and collecting the taxes, are in direct opposition to the provisions of the road law. So also is the fifth section, (which imposes a fine on the commissioners who refuse to act) in opposition to the road law. The section authorises the making of such by-laws and ordinances as may be necessary to promote the peace, good order, benefit and

(Easton Road Case.)

advantage of the said borough, *particularly for the improving, repair-ing, and keeping in order, and regulating the streets, roads, lanes, alleys, and highways.* It is evident from these sections that it was the intention of the framers of this act of incorporation to invest the officers of the borough with exclusive power over the streets, &c. The Court of Quarter Sessions has been divested of its jurisdiction. There is, in fact, no supervisor to whom they could issue an order for opening a road. The council have the entire control over the street commissioners, and I do not see by what authority the Quarter Ses-sions could issue their order to them. The case of the road in the borough of *Mercer*, 14 *Serg. & Rawle*, 447, which has been cited, de-pended upon an act of incorporation, entirely different, in most of its provisions. There is no power given to appoint a street commissioner vested with as extensive authority as in the act of the borough of *Easton* : and moreover, the *Mercer* act of incorporation, contains a proviso, that nothing contained in that act should be repugnant to the laws of the commonwealth; whereas the seventeenth section of the borough act of *Easton*, repeals in express words the general road law, so far as it is altered or supplied by the act of incorporation. The case of the *Mercer* road differs in many other respects.

It is the policy of towns with a dense and increasing population, to invest their officers with an exclusive control over their streets; and also to have recorded, as in this case, an unalterable draft of all the roads and streets within the borough. Such a feature in an act of incorporation is conducive to the peace and prosperity of the town. It is indeed high time that many of our boroughs should adopt a simi-lar provision, and prevent any new streets or roads being made with-out the consent of the owners of the ground was first obtained, and a purchase made by those persons interested in the new road or street. They might then sit quietly down under their own vine and their own fig tree, and have none to make them afraid.

The opinion of the court is, that the proceedings in this case must be confirmed.

HUSTON, J.—The only question in this case is, had the Court of Quarter Session power to lay out a road through the out-lots in the borough of *Easton* : and it would seem that was settled by this court in 14 *Serg. & Rawle*, 447. The counsel attempted to distinguish this case from that, by showing that some clauses in the act incorporating *Easton*, differed from those erecting *Mercer* into a borough. The difference does not appear to me material. The seventh section of this act authorises the court to appoint street and road commission-ers, and improve, repair and regulate the streets, &c. &c. The same power, in words equally strong, was given to the corporation of *Mercer*. There is here, however, in section fourteenth, a provision that a draft of the public square, and of all streets, lanes and alleys, shall be made, and two copies filed in different offices, and that those so designated shall remain forever. This relates solely to streets,

lanes and alleys then in existence; but not a word is said about such as might thereafter be deemed necessary.   But the seventeenth section repeals the road law *so far* as relates to the election of supervisors, and the assessing taxes; so did the act incorporating *Mercer;* not in express terms, but by directing an entirely different mode of appointment and of assessment.

That case was fully considered; it was known that out-lots adjoined the town plot of almost every borough in this state, and that those out-lots were generally included within the bounds of the borough; that as the population of the town and country increased, additional roads became necessary, and had been laid out and considered, and were public roads.

The power given to the Quarter Sessions is general; the words embrace the whole state.   It is modified by directing more viewers, and greater solemnity, in this city and the incorporated parts of this county, but still is left in the Quarter Sessions.   We agree with the case decided, that the Quarter Sessions had the power to lay out this road, and the decision of the Quarter Sessions of *Northampton* county is reversed, and the case sent back to be proceeded in according to law.

Decision of the Quarter Sessions affirmed.