No. 7069.

### LESASSIER & BINDER VS. THE BOARD OF LIQUIDATION.

When a bond sued on is, from the manner of its indorsement, payable to bearer; or the defendant tacitly acknowledges the title of the plaintiff; or no adverse title is pleaded, or suggested in the printed argument of defendant's counsel; or when defendant merely pleads the general issue, the genuineness of the signature to the bond is thereby admitted, and no proof of the payee's indorsement is necessary.

When an act under private signature is permitted to be read in evidence, without objection, proof of its execution is waived.

The State not being suable, except by her consent, prescription, as to debts due by her, is suspended.

The bonds issued by the State in 1828 in favor of the "Consolidated Association of the Planters of Louisiana," are valid obligations of the State, and entitled to be exchanged for consolidated bonds of the State, under the funding act passed by the Legislature in 1874. On such bonds the State is bound as principal, not as surety, and hence is not entitled to the right of discussion.

Bonds of the State, the exchange of which for consolidated bonds subrogates the State to rights against third persons, should not be destroyed by the Board of Liquidation, but turned over to the proper State authorities for the benefit of the State.

The application for a rehearing made by an *amicus curiæ*, although filed within six days, will not suspend a judgment of this court, when not called to the attention of the court, and no order is asked, or made in relation to it, within that time.

APPEAL from the Third District Court, parish of Orleans. *Monroe*, J.

*Breaux, Fenner & Hall* for plaintiffs and appellees.

*J. C. Egan*, Assistant Attorney General, for defendants and appellants.

The opinion of the court was delivered by DEBLANC, J., and on the application for a rehearing by MANNING, C. J.

DEBLANC, J. Plaintiffs are the holders of three bonds, which—they allege—are exchangeable, and which they have sought to exchange for consolidated bonds, under an act adopted by the legislature and approved on the 24th of January 1874. The bonds thus held by plaintiffs were issued nearly half a century ago, on the 31st of December 1828, under an act of the Legislature of the State. They are signed by

P. Derbigny—then the Governor of Louisiana, and countersigned by F. Gardère, then the Treasurer of said State.

In its answer to plaintiffs' demand, the Board of liquidation denies that those bonds are fundable, and—in bar of the action brought to compel it to fund them, pleads the prescription of five and ten years. In the printed argument filed in its behalf, the attention of the court is called to only one fact, and that is that there is no proof of the genuineness of the signature of the payee of these bonds. In its report of the 1st of October 1877, the Board bases its refusal to exchange them, on the ground that the liability of the State thereon is exclusively that of a surety, and that—as a surety—the State is entitled to the benefit of discussion of the property of the principal debtor, and—in the opinion of the Board—that principal debtor is the Consolidated Association of the Planters of Louisiana.

We, here, transcribe in full one of the three bonds held and declared upon by plaintiffs:

" KNOW ALL MEN BY THESE PRESENTS, That THE STATE OF LOUISIANA, acknowledges to be indebted unto the *President, Directors and Company*, of the Consolidated Association of the Planters of Louisiana, in the sum of ONE THOUSAND DOLLARS, which sum the said State of Louisiana promises to pay, in current money of the UNITED STATES, to the order of said President, Directors and Company, on the thirtieth day of June, one thousand eight hundred and forty-three, with interest at the rate of FIVE PER CENTUM PER ANNUM, payable half yearly, at the place named in the endorsement hereof, viz: on the thirtieth June and thirty-first December, of every year, until payment of said principal sum.

"IN TESTIMONY WHEREOF, the Governor of the State of Louisiana has signed and the Treasurer of said State has countersigned these presents, and caused the seal of the State to be affixed thereto, at NEW ORLEANS, this thirty-first day of December, in the year of our Lord one thousand eight hundred and twenty-eight.

                         "Signed" P. DERBIGNY, Governor.

" Countersigned " F. GARDÈRE, Treasurer.

The endorsement on the bonds is in these words: "We the undersigned, Manuel Andry, President, and Jacques Louis Prevost, Cashier of the Consolidated Association of the Planters of Louisiana, *for value received*, do hereby endorse and transfer the within bond, of one thousand dollars, bearing interest at the rate of five per cent per annum, to the order of......, *and do hereby bind the State of Louisiana*, and President, Directors and Company of the Consolidated Association of the Planters of Louisiana, *to pay the said interest half-yearly*, on the thirtieth day of June, and the thirty-first day of December of each year, in the city of London, at the counting-house of Baring Bros. & Co., at the

exchange of four shillings and sixpence sterling per dollar, upon presentation and delivery of the dividends warrants, in the margin hereof, *and also do bind the said President, Directors and Company to re-imburse the principal at the same place, at the exchange of four shillings and three-pence sterling per dollar, upon presentation and delivery of this bond on the day when this bond becomes due.*

"Signed" MANUEL ANDRY, President.

J. L. Prévost, Cashier."

We have found annexed to the original bond which accompanies the transcript, the following agreement, to wit:

"Know all men by these presents, that the managers and Directors of the Consolidated Association of the Planters of Louisiana, by virtue of an act of the State of Louisiana, approved February 26, 1866, and entitled "An act providing for the final liquidation of the Consolidated Association of the Planters of Louisiana," hereby engage and bind the said Association, through me, their undersigned and authorized agent, to pay in New Orleans, at their banking house, the amount remaining due on bond of the State of Louisiana, C., No. 464, dated 31st December, 1828, and due 30th June, 1843, in the following mode and proportions, viz:

One hundred dollars on 30th June, 1870;

One hundred dollars on 30th June, 1872;

One hundred dollars on 30th June, 1874;

One hundred dollars on 30th June, 1876;

against delivery of the respective warrants hereunto annexed, which will serve as receipts; and this bond shall be considered as a proof of the debt, from the State of Louisiana, and the Consolidated Association to the holder, for no other sum than the aggregate amount of such warrants as may remain in the possession of said holder. The last installment will be paid only on delivery of the original bond.

The Consolidated Association of the Planters of Louisiana hereby engages also to pay regularly at its office in New Orleans, the half-yearly dividend warrants annexed hereto, at their respective maturities, and solemnly declares that nothing in this document or arrangement, is intended to release the State of Louisiana from its engagements towards the holder of the Bond, C., No. 464—nor shall be construed to release or discharge any right of the holder to the securities given by the mortgages granted under and by virtue of the Act of Incorporation of the said Bank, and acts amendatory thereto, approved by the Governor of the State of Louisiana.

In testimony whereof, the agent and representatives of the Managers and Directors of the Consolidated Association of the Planters of Louisiana, holding full power to bind the said Association, has signed

these presents in Amsterdam, the sixteenth day of September, in the year of our Lord, one thousand eight hundred and sixty-six.

[Signed]                              A. SCHREIBER, Agent.

The counsel representing the Board contends that the general denial filed in its name, puts at issue the title of plaintiffs to the bonds they hold, and that—as there is no proof of the genuineness of the signature of the payee of said bonds, the disputed title has not been established, and—on that ground—they ask the reversal of the judgment of the lower court.

For at least four reasons, that defence is untenable:

1. In their form and endorsed as they are, those bonds are really payable to any bearer therof. 10 R. R. 128; 3 R. 195; 3 N. S. 291—392.

2. The Board did not contest, but—from the tenor of their report, tacitly acknowledged the title of plaintiffs.

3. No adverse title is mentioned either in the pleadings or the printed argument, and none was otherwise suggested.   8 N. S. 509; 2 A. 97—441; 5 N. S. 512; 9 M. R. 469; 4 L. 430; 5 L. 48; 14 L. 254; 13 L. 13.

4. The general issue pleaded by defendant is equivalent to an admission of the genuineness of the signatures, which—though not acknowledged, is not absolutely denied, not even in counsel's brief; and —besides—when an act sous seing privé is permitted to be read on evidence without objection, proof of its execution is waived.   8 A. 312; 12 A. 340.

Is plaintiffs' action barred by prescription ?   The State not being suable, except with her consent, the course of the prescription invoked by defendant's counsel was effectually suspended; and, were it otherwise, the State—under act No. 92 of 1843—took possession of and held in pledge—until recently, all the assets of the Consolidated Association of the Planters of Louisiana, and that pledge was a standing acknowledgment by the State of an obligation, which—tacitly or expressly— was ten times acknowledged by her Legislature, in ten different acts, and more particularly by those of 1847 and 1866, in and by which her Representatives authorized the extension of the time of payment of those bonds.

See Acts No. 19 of 1828, of 1835, 1836, 1842, 1843, 1845, 1847, 1848, 1853, and 1866.

Do the three instruments held by plaintiffs, presented to the Board and now under consideration, witness—in the language of the acts of 1874 and 1875—outstanding and valid bonds of the State, issued in strict conformity to her laws, not in violation of her Constitution or of the Constitution of the United States, and for a legal consideration ? They do, and—with its undoubted impartiality—the Board itself has so declared: that declaration is published in their report:

" We wish it distinctly understood that we do not deny the eventual liability of the State, in case the assets of the bank, and of the stockholders prove insufficient, after legal discussion according and in conformity to the full measure of the obligation contracted, and we fully recognize that the faith of the State is pledged to redeem all promises made, and all liabilities incurred, but beyond this we hold that the State has no legitimate authority to extend her liabilities, and therefore we believe in this instance that the bondholders must look to the assets pledged to their re-imbursement, see that they are properly and legally administered and applied, and should these prove inadequate, they, in the meantime, having pursued all their legal remedies, then apply to the State for the fulfillment and redemption of her promises.

Respectfully submitted:

(Signed)                                    LOUIS BUSH, Chairman;
                                            LOUIS A. WILTZ,
                                            ALLEN JUMEL."

The Board is mistaken as to the character of these obligations, the very terms of which repel the construction contended for in its report. "The State of Louisiana acknowledges to be indebted unto the President, Directors and Company of the Consolidated Association of the Planters of Louisiana, in the sum of one thousand dollars, which sum the State of Louisiana promises to pay to the order of said President, Directors and Company, at the place named in the endorsment hereof, etc." Such words do not, can not constitute, embrace or evidence an accessory obligation, do not, can not create or describe an accessory promise. Those words are the studied and clear expression of a principal obligation, of an unconditional promise.

Can we add to those terms? Can we arbitrarily presume that the State did not intend to bind itself, as—in law and in fact—she is bound by the terms of her contract—that, when she said without reservation, I acknowledge to be indebted, I promise to pay, it meant—though she said the very reverse—indebted as a surety, the surety of one who, in the instrument is recognized as a creditor, and pay in case my recognized creditor fails to do so. This would be a perversion of the very letter of the contract submitted to our consideration.

According to our Code, " suretyship is an accessory promise, by which one binds himself for another *already bound*, and agrees with the *creditor* to satisfy the obligation, if the debtor does not. In this instance, if the State be but a surety, who—when she bound herself as such—was already bound as the principal debtor? Who—then—was the creditor with whom the pretended surety agreed to satisfy the obligation, if the unknown and nameless debtor did not? The most careful inspection and perusal of the instrument would not have left the

impression that the Consolidated Association, therein represented as a creditor, was in reality the principal obligor, that the State which alone acknowledged to be indebted, and alone promised to pay, was but a surety, and of whom? Of its recognized creditor, of the party in whose favor the bond was subscribed, to whose order it was payable.

In its report, the Board—referring to the endorsements on the bonds—said:

"Leading to the same result, and confirming the views we have taken of the question, we refer to the subsequent dealings of the parties, to wit: the bank and the bondholders. Acting on the principle that she was merely a surety, and wishing to maintain her faith intact, the State gave her consent, by act 100, of 6th April, 1847, p. 77, sec. 4, to an extension by the *bank* of the bonds for six, nine, twelve, fifteen and eighteen years, and by act No. 38, of February 26, 1866, *on the same terms as then existed,* for a period of ten years, and no more [p. 66, sec. 1], thus waiving, as a surety, the objection which might otherwise have been urged by her that the creditors, the bondholders, had done acts which impaired her rights, or had given a prolongation without her consent. In these two acts nothing is left to inference, for in both it is the Managers and Directors of the Consolidated Association who are authorized to negotiate for the extension of the bonds, and it is they, who with the bondholders, agreed to the prolongation granted, with the consent of the State, given as aforesaid."

The endorsement on these bonds does—in no way—change or impair the unqualified and unconditional obligation of the State to satisfy said bonds. It adds—to the State obligation—that of the Consolidated Association. It mentions the balance due on what is therein called "the bonds of the State of Louisiana," and specially provides that it shall not be construed as releasing the State of Louisiana, or discharging any right acquired by the holder of those bonds under the act of incorporation of the Consolidated Association, or any act amendatory thereto.

Whatever may be—as between the State and the Consolidated Association—the liabilities of the latter to the former, as to third parties and on those bonds, the State was and has not ceased to be a principal debtor; and—as to third parties—can not be legally regarded as the surety of one who—in those bonds—is represented as its creditor.

The obligations sought to be exchanged by plaintiffs bear signatures and dates which repel suspicion: they are, beyond any doubt, a just, an honest debt of our State, and should be funded.

In only one particular, the judgment of the lower court must be amended. The 8th section of the act of 1874 provides: "that the bonds and valid warrants outstanding at the time of the passage of

said act, shall—as fast as they are received in exchange for consolidated bonds—be cancelled and destroyed by the Board of liquidation, etc."

This instruction applies and refers to exclusively the bonds and warrants which—when exchanged for consolidated bonds—are the useless evidence of a prior claim reduced by the exchange—the balance due on which—after the reduction—is witnessed by a new instrument; but it does not refer and should not be applied to any of the warrants and bonds which—as those sued upon—shall, after the exchange, constitute the evidence of a claim of the State against other parties—of its subrogation to every right securing said claim, and which—for that reason—should be preserved and delivered to the proper authorities of said State.

It is, therefore, ordered, adjudged and decreed that the Board of liquidation be and it is hereby enjoined and prohibited from destroying, after their exchange, any of the bonds mentioned and described in plaintiffs' pleadings.

It is further ordered, adjudged and decreed that every right and action of the State of Louisiana, in, on, or concerning said bonds, whether said right and action were acquired before, or be acquired by and after the exchange of said bonds, be and they are expressly reserved.

It is lastly ordered, adjudged and decreed that—as amended by this decree—the judgment of the lower court is affirmed with costs.

---

## On Application for Rehearing.

Manning, C. J. A member of the bar applies as *amicus curiæ* for a rehearing of this cause. The application for a rehearing was filed within six days, but was not called to our attention, nor any order either asked or made in relation to it, within that time. Although it is competent for the court to grant a rehearing, either on the suggestion of an *amicus curiæ*, or *ex proprio motu*, we are of opinion that the mere filing of an application for rehearing by an *amicus curiæ* has not the effect of suspending the judgment, as is the case when such application is made by one of the parties to the suit. The judgment has become final and is the property of the parties, and therefore

The application for a rehearing can neither be considered nor allowed.