# Elkin *v.* Timlin, Appellant.

*Statute of frauds—Promise to pay debt of another.*

Where the leading purpose of a promise is to subserve some interest or object of the promisor himself, notwithstanding the effect is to pay or discharge the debt of another, the promise is not within the statute of frauds.

Defendant contracted to sell his own undivided interest in land to plaintiff and also the interest of a cotenant. When the deed of the cotenant was offered to plaintiff, he objected to taking it, because he feared there might be judgments against the cotenant. Defendant, to induce him to take the deed, made an oral agreement to pay all of the cotenant's judgments.

*Held,* that the promise of the defendant was not a promise to pay the debt of another within the statute of frauds, but was an original undertaking, based upon a sufficient consideration.

Argued Oct 5, 1892. Appeal, No. 155, Oct. T., 1892, by defendant, J. A. Timlin, from judgment of C. P. Jefferson Co., Feb. T., 1889, No. 174, on verdict for plaintiff, John Elkin. Before STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Assumpsit on parol promise to pay judgments against L. S. Watt.

At the trial, before WHITE, P. J., of the 40th judicial district, specially presiding, it appeared that the defendant and L. S. Watt were cotenants in a tract of land. Defendant contracted to sell his own and Watt's undivided interest in the land to plaintiff. Evidence for plaintiff tended to show that when Watt's deed was tendered to plaintiff he objected to taking it through fear of judgments binding the land. Defendant being anxious to sell the land, then said to plaintiff: "I will stand good to you for all judgments against Watt." The land was subsequently sold on a judgment against Watt, and plaintiff bought it in. He then brought this suit to recover the amount that he paid the sheriff.

The court admitted, under objection and exception, the deeds from defendant and Watt to plaintiff; also record of judgment against Watt, on which the land was sold, and the sheriff's deed to plaintiff. [7–10]

The court charged in part as follows:

"The deed, however, which J. A. Timlin made to John Elkin, and the deed from L. S. Watt to John Elkin—which have been read in your hearing—are deeds which have no covenants of the character we have indicated to you. They are what are called quitclaim deeds, or deeds of release, by which the releasor, or person executing the deed, releases or quitclaims to the person to whom the deed is so made, all the interest and title they have in the land, and these are, ordinarily, made to some person who has other interest in the land. If the matter, then, rested here upon the face of the deeds alone, the plaintiff would have no standing, even though the interest of L. S. Watt, which was so released to him on the 15th day of May, 1886, would be lost to him entirely, and he would be without any remedy of indemnity or reimbursement for the expenses

he was put to incident to it, unless there was some contemporaneous parol or verbal agreement about it." [11]

The court, after referring to the promise of the defendant to pay Watt's judgments, continued as follows:

"For the purposes of this case and to avoid confusion, we may say one instance, the proper one for us to consider here, exists where the promisor or party sought to be charged has himself become the actual debtor by reason of the transaction, although a third party may be the debtor; so that, as between him and the original debtor and the person seeking to enforce the promise, his real liability is superior to that of the original debtor. In such instances, the promise of this third party becomes an original undertaking. To make it plainer, where a party may be the defendant in a judgment, for instance, and a third party, outside of that defendant, has dealings with another party about a matter that that judgment affects, if this third party makes a promise to the party with whom he is dealing to protect him against the liability of this debtor, he can make himself liable for this debtor—the defendant in the judgment—notwithstanding he does not put it in writing, if the transaction partakes of an original undertaking. [12] . . . .

"If it should be found by the jury that the defendant did sell these two interests to the plaintiff and did agree to indemnify him in the manner claimed by the plaintiff, then he would be liable as on an original undertaking. If, on the other hand, he merely sold his interest in the land and Labana Watt sold his interest at the same time, each making a deed, and there was no original undertaking upon the part of Mr. Timlin in selling or in making the transaction for both interests with John Elkin, if that was the way of it, and he may have said that he would stand good for any judgment entered against L. S. Watt, still he would not be responsible, unless he was the person who sold the two interests and with whom John Elkin was dealing. So you will observe the question in dispute in this connection. . . . [13]

"Did J. A. Timlin sell this land, these two shares to the plaintiff? Was he the contracting party? Did he make the representations and the guarantee to be responsible for the encumbrances against L. S. Watt's interest or not? Discover how that is; that is your duty. [14]

" Another principle of law has been invoked here; that is the principle that obtains as to testimony being clear, precise and indubitable before there could be a finding for the plaintiff. Now, that is a principle of evidence that is applicable where a contemporaneous verbal contract is set up with a written contract. To make it plain; when a written contract is made between the parties and it is alleged by one of the parties to it that he would not have entered into it if it had not been for the verbal agreement made contemporaneously or at the same time with it, why it is incumbent upon the party so setting up that parol agreement, which may alter, change or vary the writing, to establish it by evidence clear, precise and indubitable. That is the rule or standard or quality of the testimony. We recognize the force of that rule. We may say that we do not think that principle obtains here, for the reason that here is a deed of release executed by Labana S. Watt for the interest in the land about which we are inquiring and against which this judgment was executed. There was no writing between Mr. Timlin and Mr. Elkin. The contract was made verbally. Mr. Timlin made his deed; Mr. Watt made his deed. I am now speaking of the writing alone, to avoid any confusion, we have no reference to the testimony about there being an alleged parol agreement. I am speaking now only of the deeds. Now, Mr. Timlin did not sign any writings about Watt's deed; and, to establish that rule here, we would have to require that Mr. Timlin should have written in that deed of Watt the alleged guarantee. Consequently, we do not think that rule applies. But the jury must be satisfied, from the weight of the testimony, as we have instructed you, that Mr. Timlin sold this land, these two shares to Mr. Elkin, and that he made the guarantee or the agreement to stand good for it; you must find that from the weight of the testimony. [15] . . . ."

At the request of the jury for additional instructions the court charged as follows:

" We explained to you the statute of 1855, which regulated a verbal promise by a third party to pay the debt of another. That is to say, we explained to you that, where A. had a judgment against B., or an account against B., and C. promised to see it paid or be responsible for it, that promise, if the amount was over $20, would not be good unless it was in writing. We

explained that, and repeat it to you now. If, however, the third party—take the instance of C—A. having a judgment against B., and C., a third party, promises to be responsible for the judgment, his promise or agreement so to do would be binding if it becomes what is called 'an original undertaking;' that is to say, if he makes the debt his own or assumes liability for it between himself and another party interested in it. He may make it an original undertaking of his own and relieve it from the prohibition of not being in writing and make it good. [16]

" Now, then, to apply that principle, we said here that if Mr. Timlin sold these two interests to Mr. Elkin, or, in order to effect the sale of his own interest to Mr. Elkin at the time, said that he would stand good for any judgments or any incumbrances against L. S. Watt, and Mr. Elkin paid his money in consequence of that and the sale was thus effected, it would be an original undertaking within the exception we indicated; that is to say, a verbal contract for that purpose could be enforced. Now, then, that is the one proposition. [17]

" We submitted to you to discover whether Mr. Timlin sold the two interests to Mr. Elkin, or, in order to make a sale of his own, agreed to become responsible for the payment of any liens existing against L. S. Watt; if you find that was the case, why that would be valid and legal. Now, then, you will observe, in repeating, the plaintiff alleges that there was a sale by Timlin of the two interests, and that, in order to effect the sale of the two, he agreed to become so responsible, and that loss was suffered in consequence of his failure to do so. While the defendant denies that such was the case; that it is true the sales were made, but it was the two interests sold, and each for himself, he for himself, and Watt for himself. We recited in detail the testimony that each side had produced to establish that fact. Now, you are to take all the evidence bearing upon a particular fact. You want to ascertain whether or not a sale was made by Timlin of the two interests, or whether, in order to effect a sale of his own, he agreed to become responsible for the payment of any liens against Watt. [18] . . . . "

Plaintiff's points were as follows:

" 1. If, under the facts in this case, they find Timlin made the contract to sell the land, and when the deed of Labana S.

Watt was offered to Elkin, Elkin objected to taking it on the grounds that he feared there might be judgments against Watt, and that, in order to induce Elkin to take the deed, J. A. Timlin said, 'I will stand good to you for all judgments against Watt,' and John Elkin accepted the proposition of Timlin and took the deed in pursuance thereof, the verdict of the jury should be for the plaintiff. *Answer:* That, under the principles of our general charge, is affirmed." [1]

" 2. If Timlin bargained with Elkin to sell and convey him the interests in the land, and, as an inducement to Elkin to take the conveyance of the two interests in the form the deeds were drawn, promised to stand good to Elkin for anything that was entered against L. S. Watt, and John Elkin, on the strength of the promise, paid his money, he is entitled to a recovery. *Answer:* This, under the principles of our general charge, is also affirmed." [2]

Defendant submitted the following points, among others:

" 1. From the pleadings and evidence in this case, the plaintiff cannot recover, and your verdict must be for the defendant. *Answer:* This would require us to decide the case ourselves. For the reasons stated in our general charge, we have submitted it to you. This point, therefore, is refused." [3]

" 2. The plaintiff's claim, as set forth in the pleadings, seems to be that of guarantee, as alleged by him, having purchased an interest in a piece of real estate from one L. S. Watt, paying him therefor the sum of $275, and at the day of the date of the covenant and delivery of the deed the defendant, J. A. Timlin, agreed to stand good for anything that was against said L. S. Watt, and it being afterwards discovered that there was a judgment against L. S. Watt, which was a lien on said real estate so purchased by John Elkin and which he subsequently paid, this being the case it would come under the statute of frauds and perjuries, and plaintiff cannot recover, and, therefore, your verdict must be for the defendant. *Answer:* We have explained that question in our general charge, and, therefore, we refuse this point." [4]

" 5. The plaintiff claims the sale of the L. S. Watt interest was made by the defendant and that L. S. Watt had nothing to do with it, and that the deed was really that of Timlin; if this be true, which must be shown by clear, precise and indu-

bitable proof, then the plaintiff can only recover on the warranties contained in the deed of L. S. Watt to John Elkin, and if such be the case, plaintiff is not entitled to recover. *Answer :* We have stated to you that he could not recover on the deeds at all. The only question is, Was there such a parol contract made as contended for by him, the plaintiff." [5]

" 6. In order to change, alter or vary the sale of L. S. Watt to John Elkin by parol testimony, the evidence must be clear, precise and indubitable, and if the evidence is not of that character, your verdict should be for the defendant. *Answer :* We have already explained in our general charge that we do not think this a case where that rule of evidence applies; that this case was to be decided on the parol agreement between the plaintiff and the defendant, and by the weight of the testimony as we have stated to you." [6]

Verdict for plaintiff. A motion for new trial was overruled by the court in an opinion, citing Hoile v. Bailey, 58 Wis. 434; Houlditch v. Milne, 3 Esp. 861; Castling v. Aubert, 2 East, 325; Prime v. Koehler, 77 N. Y. 91; Close v. Zell, 141 Pa. 390. Judgment was entered for plaintiff. Defendant appealed.

*Errors assigned* were. (1–6, 11–18) instructions, quoting them as above; (7–10) rulings on evidence, but not quoting offers, etc.

*H. Clay Campbell, A. C. White* with him, for appellant.— The promise of the defendant was within the statute of frauds: Nugent v. Wolfe, 111 Pa. 471.

*W. F. Stewart* and *Charles Corbet,* for appellee, relied upon the authorities cited by the court below.

OPINION BY MR. JUSTICE STERRETT, October 31, 1892.

In plaintiff's first point the court was, in substance, requested to charge the jury: That if they found defendant made the contract to sell his own and Labana S. Watt's undivided interests in the land, and when Watt's deed was offered to plaintiff he objected to taking it because he feared there might be judgments against Watt; and, in order to induce him to take the deed, defendant said, " I will stand good to you for all judgments against Watt," and thereupon plaintiff accepted de-

fendant's proposition " and took the deed in pursuance thereof, the verdict of the jury should be for plaintiff."

An examination of the testimony clearly shows that it tended to prove the facts of which this controlling proposition is predicated. The questions of fact thus raised by the testimony were necessarily involved in the issue, and it was the exclusive province of the jury to pass upon them. If those questions were determined in plaintiff's favor, as the verdict shows they were, he was entitled to recover. There was therefore no error in affirming the point, as more fully explained in the general charge. Nor was there any error in affirming plaintiff's second point, and thereby instructing the jury, in substance, that if defendant bargained with plaintiff for the two undivided interests in the land, and, as an inducement to accept the deeds therefor as drawn, promised to stand good to him for anything that might be entered against Watt's undivided interest, and plaintiff, relying on that promise, paid the consideration money and closed the transaction, he is entitled to recover.

In effect, this proposition is substantially the same as the first. Together they embody all the material elements of plaintiff's contention, and by necessary implication the verdict in his favor establishes all the facts upon which his right to recover depended.

The defendant's promise, as thus established by the verdict, was not without consideration; nor was it an undertaking to pay the debt of another and therefore void because it was not in writing. He was, at least, interested in effecting the sale of Watt's undivided interest in the land, because the sale of his own interest depended on that. Plaintiff had agreed to buy both interests, but not either without the other.

When he refused to close the transaction without being assured that Watt's interest was unencumbered, defendant, prompted by self interest, made the promise on which plaintiff relied in accepting the deeds and paying the consideration money. There is no reason why he should not be bound by it. Instead of being a promise to pay the debt of another, within the meaning of the statute, it was essentially an original undertaking, to indemnify, etc., based on a sufficient consideration: Nugent v. Wolfe, 111 Pa. 471 ; Close v. Zell, 141 Pa. 390. In

the first of these it was said that when the leading object of the promise is to subserve some interest or purpose of the promisor himself, notwithstanding the effect is to pay or discharge the debt of another, the promise is not within the statute.

It follows from what has been said that there was no error in refusing to affirm defendant's points for charge, recited in the third to sixth specifications respectively. In the first of these he was requested to charge : " That from the pleadings and evidence, the plaintiff cannot recover, and your verdict must be for the defendant." To have affirmed that proposition would have been manifest error. The case, as we have seen, hinged upon questions of fact, which were necessarily for the consideration of the jury. In a very elaborate charge, the attention of the jury was called to these questions, and they were fairly submitted to their determination.

There is no error in either of the matters complained of in the seventh to tenth specifications inclusive ; nor in those portions of the learned judge's charge recited in the remaining specifications, eleventh to eighteenth both inclusive. There appears to be nothing in the record that requires a reversal of the judgment.

Judgment affirmed.