## Weber & Co. *v.* William J. Bishop, Appellant.

*Statute of frauds—Inducing advantage to promisor.*

The delivery of goods held by plaintiff on storage which were consigned as the property of J. to W., who had become the assignee by sheriff's sale of J.'s property, presents such advantage to W. as invokes the rule of law that wherever the main purpose of the promisor is not to answer for the debt of another but to subserve some purpose of his own, his promise to pay a debt of that other is not within the statute.

Argued Oct. 10, 1899. Appeal, No. 120, Oct. T., 1899, by defendant, from judgment of C. P. No. 3, Phila. Co., Sept. T., 1898, No. 473, on verdict for plaintiff. Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Affirmed. Opinion by W. W. PORTER, J.

Assumpsit to recover $343.75 with interest, being the amount due by defendant to plaintiff for work and labor done in dyeing certain hosiery for defendant.

There was evidence tending to show that plaintiff received the goods in question on storage and kept them until William J. Bishop, defendant, sent for them. That the goods had formerly been the property of John Bishop, and had been purchased after sheriff's sale by William J. Bishop. There was evidence tending to show that William J. Bishop had said to plaintiff as an inducement to deliver up the goods, " I will pay all John's bills," and that in consequence of said promise, the goods were delivered to William J. Bishop, he having said in addition, " I have taken charge of the business now, and all bills are to be paid by me," and that if the goods in storage were delivered to him he would pay the debts of his brother, and requested plaintiff to be a little easy with him. Plaintiff

testified further that William J. Bishop subsequently paid $50.00 on account of the debt, and that the goods which he received in storage amounted in value to about $500.

Defendant presented the following point:

[The court is asked to give binding instructions to the jury to find a verdict in favor of the defendant, for the reason that as a matter of law the verbal promise of the defendant if he ever made such a promise to pay to the plaintiff the debts of John H. Bishop, would not be binding upon him, and there can be no recovery against him. *Answer:* Refused.] [2]

Defendant asked for nonsuit which the court refused.

The court charged the jury in part as follows:

[It is for you to say whether—it being admitted that John H. Bishop owed the debt to the plaintiff—William J. Bishop promised to pay it. If he did, on condition that certain goods which were stored should be delivered to him; if he received that consideration, then I say to you that his promise is binding upon him, although it was not made in writing.] [5]

Verdict and judgment for plaintiff for $250. Defendant appealed.

*Errors assigned* were (1) in refusing to grant the nonsuit upon the facts as submitted to the court under the Act of April 26, 1855, P. L. 308, entitled, " Fraud and Perjuries." (2) Refusing to affirm defendant's point, reciting same. (3) In charging the jury in stating as follows: " I believe she admitted that after the sheriff's sale William J. Bishop was the real owner of the business," and in not referring to the testimony of witness, wife of John H. Bishop, in which she states, " I was the owner until I turned everything over to him, which was in April, 1898." (4) In not referring to the contradictory testimony offered by plaintiff. (5) To portion of the judge's charge, reciting same.

*Geo. Bradford Carr*, for appellant.—It is not pretended that there was any surrender or extinguishment of the original indebtedness of John H. Bishop at the time of the making of the alleged promise, and I urge that if William J. Bishop made any promise at all it was only collateral. This question is very carefully considered in Shoemaker v. King, 40 Pa. 107, Maule v. Bucknell, 50 Pa. 39, and in Nugent v. Wolfe, 111 Pa. 471.

*Samuel W. Cooper,* for appellee.—Where a promise to pay the debt of a third person arises out of some new consideration of benefit to the promisor or harm to the promisee, moving to the promisor either from the promisee or the original debtor, such promise is not within the statute of frauds, though the original debt still subsists and remains entirely unaffected by the new agreement: Leonard v. Vredenburgh, 8 Johns. 29 ; Farley v. Cleveland, 4 Cowen, 432 ; Arnold v. Stedman, 45 Pa. 186 ; Crawford v. Pyle, 190 Pa. 263 ; Elkin v. Timlin, 151 Pa. 491.

OPINION BY WILLIAM W. PORTER, J., November 20, 1899:

The plaintiff's claim is based upon an unwritten promise by the defendant to pay the debt due by the defendant's brother. In order to escape the effect of the statute of frauds, the plaintiff invokes the rule of law, namely, that whenever the main purpose of the promisor is not to answer for the debt of another, but to subserve some purpose of his own, his promise is not within the statute, and this, although the performance of it may incidentally have the effect of extinguishing the liability of another: Arnold v. Stedman, 45 Pa. 186 ; Elkin v. Timlin, 151 Pa. 491 ; Nugent v. Wolfe, 111 Pa. 471 ; Bailey v. Marshall, 174 Pa. 602 ; Crawford v. Pile, 190 Pa. 263.

The sole question at issue, therefore, is whether the promise of the defendant, if made, was given to subserve some purpose of his own. The plaintiff is a dyer, and for many years dyed the product of the factory of John H. Bishop, who was a manufacturer of hosiery. John H. Bishop was taken sick. His brother, the present defendant, assumed the management of the business. While thus engaged, he requested the plaintiff to store some $500 worth of hosiery. To this, the plaintiff agreed. In October, 1897, the sheriff sold out the business of John H. Bishop. It seems to have been bought in by Hannah C. Bishop, his wife. The whole management, however, of the business continued in the control of William J. Bishop, the present defendant, who admittedly became the owner a few months later. During the months following the sheriff's sale, until she retired from participation in the business altogether, Mrs. Bishop received only some sums of money necessary for her housekeeping expenses. She was nominally the owner. She, however, admitted that William J. Bishop was the real

owner of the business after the sheriff's sale.    The plaintiff testifies that after this sale the defendant frequently requested the delivery to him of the $500 worth of hosiery on storage with the plaintiff, promising that, if the goods were delivered to him, he would become responsible for the debt due by his brother, John H. Bishop.    On this promise, as the plaintiff asserts, the goods were delivered to the defendant, who subsequently made a payment of $50.00, on account of the claim, by his personal check.    The making of the promise is not denied by the defendant, who was not called as a witness.    The only testimony submitted by the defendant tends to throw doubt on the original deposit of the goods on storage, and on the status of the defendant at the time the promise was made.    These were matters of fact, and as such were submitted to the jury in a charge, quite as favorable to the defendant as he could have expected. The jury have found for the plaintiff.    In view of this finding the application of the rule of law above stated is made clear. The promise made by the defendant to pay his brother's debt is supported by the advantage secured by the delivery of the stored hosiery to him.

This disposes of all of the assignments of error, save, perhaps the third, in which complaint is made that the trial judge, referring to the testimony of Mrs. Bishop, says, "I believe she admitted that after the sheriff's sale, William J. Bishop was the real owner of the business," without referring to her testimony, in which she states that she was the owner until she turned the business over to him in April, 1898.    Taking her whole testimony into consideration, we are not persuaded that the court below was guilty of error in the making of this reference to her admission.    She was at best but a nominal owner, having, as she says, received no profits, but only sums of money for household expenses for a few months, during which time the defendant had the control of the business, and at the conclusion of which the business was taken over by him, without any payment or allowance to her.    Her admission was in effect her own interpretation of her relation to the business.

The judgment is affirmed.