## May *v.* Walker, Appellant.

*Statute of frauds—Promise to pay debt of another—Guaranty.*

As a general rule when the leading object of the promise or agreement is to become guarantor or surety to the promisee for a debt for which a third party is and continues to be primarily liable, the agreement, whether made before or after or at the time with the promise of the principal is within the statute, and not binding, unless evidenced by writing. On the other hand, when the leading object of the promisor is to subserve some

interest or purpose of his own, notwithstanding the effect is to pay or discharge the debt of another, his promise is not within the statute.

Where a contractor for a building introduces a subcontractor to a material man, and requests the latter to furnish material to the subcontractor for use in the building, and the material man agrees to do so only after the contractor has promised to "stand good" for the material, the parol promise to "stand good" for the material is not within the statute of frauds, and may be enforced against the contractor.

Argued April 23, 1902.   Appeal, No. 54, April T., 1902, by defendant, from judgment of C. P. Washington Co., Feb. T., 1901, No. 61, on verdict for plaintiff in case of J. L. May v. George T. Walker and C. M. Slater, trading as Walker & Slater.   Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.   Affirmed.

Assumpsit on a parol contract of guaranty.   Before McILVAINE, P. J.

At the trial it appeared that the plaintiff claimed to hold Walker & Slater, the defendants, liable on their parol contract to stand good for certain stone furnished by the plaintiff to T. J. Kelly, who was a subcontractor under the defendants, for a building which the defendants were constructing.   The evidence relating to the parol contract is quoted in the opinion of the Superior Court.

Defendants presented these points :

2. The agreement relied upon by the plaintiff in this case was a collateral agreement to answer for the debt or default of T. J. Kelly, and not being in writing is void under the statute and cannot be enforced.   The plaintiff, therefore, can only recover for material actually furnished to the firm of Walker & Slater, and not for the material furnished to or for T. J. Kelly.   *Answer :* Refused pro forma, and the question of law raised by the point and as therein stated is reserved, with the right to enter judgment in favor of the defendant non obstante veredicto for that part of the plaintiff's claim that covers the stone furnished to T. J. Kelly. [2]

3. Under all the evidence in the case the plaintiff is only entitled to recover for the balance admitted to be due for material furnished to the defendants, and the verdict should be for said balance, to wit: $21.85.   *Answer :* Refused, and the question of law whether there is any evidence in this case

to support a verdict in favor of the plaintiff for the stone furnished to T. J. Kelly, the subcontractor of Walker & Slater, is reserved with the right to enter a judgment in favor of the defendant for this part of the plaintiff's claim non obstante veredicto. [3]

Verdict for plaintiff for $226.57, on which the court subsequently entered judgment. Defendants appealed.

*Error assigned* among others was in entering judgment on the verdict.

*John H. Murdoch,* for appellant.—The alleged parol agreement was within the statute: Wilson v. Mitchell, 101 Pa. 505; Nugent v. Wolfe, 111 Pa. 471; Bailey v. Marshall, 174 Pa. 602; Maule v. Bucknell, 50 Pa. 52; Shoemaker v. King, 40 Pa. 107; Townsend v. Long, 77 Pa. 143.

*T. F. Birch,* for appellee, cited: Roland v. Eckman, 12 Pa. Superior Ct. 75; Bailey v. Marshall, 174 Pa. 602; Duncan v. Shaw, 17 Pa. Superior Ct. 225; Warnick v. Grosholz, 3 Grant, 234.

OPINION BY ORLADY, J., July 10, 1902:

The defendants were awarded the contract for the erection of a large business building in Washington, Pa., and they sublet to T. J. Kelly the foundation and stonework for the same. Kelly resided at Pittsburg, and, when he came to Washington to sign the contract with the defendants, he was given the name of the plaintiff and another material man and prices submitted by them for material to be used in the projected work. Prior to this, however, one of the defendants called upon the plaintiff and informed him that Kelly would need material after he had signed the contract, and the controversy in this case grows out of the conversation between the plaintiff and Mr. Walker speaking for the defendants, the plaintiff contending that his agreement to furnish the building stone was based entirely upon the distinct and unqualified promise that the defendants would pay him for the material furnished to Kelly. May was not acquainted with Kelly until this introduction, and had some trouble in regard to collecting pay for materials fur-

nished for an enterprise with which Walker & Slater had been identified, and was particularly careful in this instance to secure the promise to pay from Walker & Slater, for the reason that it was a "non-lienable" job. There is no dispute as to the amount of stone furnished, and the plaintiff is supported in the main by the testimony of Kelly. The expressions used, as found by the verdict, are as follows: " Walker agreed to pay me upon Kelly's order. I didn't know the man myself; I had never seen him until he was brought to me by Walker. I told Mr. Walker that I had been beaten on a former foundation through what is known as the nonlienable act; that such would not happen again, and if I would furnish the stone to Mr. Kelly he would be obliged to stand good for them, and he agreed to, and told me if Kelly signed the contract which he was expecting him to do that day, that, if I would furnish the stone, he would stand good for the stone." The plaintiff furnished the stone pursuant to the agreement, and they were identified on his book by memoranda in Kelly's name, for the purpose of showing the building or operation to which they were delivered. A motion for a nonsuit was made, but this was refused, and a verdict was returned in plaintiff's favor; and the question argued by appellant is, should the court upon plaintiff's evidence have determined that the alleged promise was void or was it properly left to the jury as a question of fact.

It is important to note that the defendants were familiar with the plaintiff and the material he had for use in the building, and that Kelly, to whom they sublet the foundation, was a stranger to the plaintiff, and further that the plaintiff was seeking to avoid loss by dealing directly with the defendants. While incidentally the payment by the defendants to the plaintiff would extinguish the liability of Kelly, it was an original undertaking entered into to subserve the defendants' purpose and they had the whole matter within their control, as Kelly was their subcontractor, and knowing that the building was not lienable for the plaintiff's claim, the necessity for such an arrangement, as testified to by the plaintiff, was the more apparent. At the inception of the transaction there was no debt of Kelly to May. The claim of the plaintiff grew out of the facts as made by the defendants. These facts are clearly shown by the testimony of the plaintiff and Kelly, and it was purely a ques-

tion of fact for the jury to determine whether they should be believed.

Whether the debt in controversy be that of him who has assumed to pay it or of another is in most cases a question of fact. There can be no precise legal definition of liability under the Act of April 26, 1855, P. L. 308, which will determine in all cases, perhaps in but very few, the answerability of him who promises to pay: Bailey v. Marshall, 174 Pa. 602.

As stated in Nugent v. Wolfe, 111 Pa. 471, " As a general rule, when the leading object of the promise or agreement is to become guarantor or surety to the promisee for a debt for which a third party is and continues to be primarily liable, the agreement, whether made before or after or at the time with the promise of the principal is within the statute, and not binding, unless evidenced by writing. On the other hand, when the leading object of the promisor is to subserve some interest or purpose of his own, notwithstanding the effect is to pay or discharge the debt of another, his promise is not within the statute: " Crawford v. Pyle, 190 Pa. 263. It is apparent that the defendants were interested in the debt. After making the contract with Kelly they sent him to the plaintiff to secure the stone, and agreed to accept Kelly's order on themselves for the stone furnished. They undertook to answer to the plaintiff for the value of the materials they were to use through Kelly's contract in the erection of the building they were constructing. This has been the accepted construction of the act and followed in our own cases: Weber v. Bishop, 12 Pa. Superior Ct. 51; Roland v. Eckman, 12 Pa. Superior Ct. 75; Baxter v. Hurlburt, 15 Pa. Superior Ct. 541; Duncan v. Shaw, 17 Pa. Superior Ct. 225.

The judgment is affirmed.

