His Honor, CHARLES F. CLAIBORNE,
rendered the opinion and decree of the Court, as follows:
The plaintiff in his argument for a rehearing has not convinced us of any error in our original opinion. We can only give more extended reasons for our conclusions.
In the case of the Acme Lumber Co., 115 La., 893, the Supreme Court said: “The legal right (to a mandamus) must be shown, and it must appear that there is no other specific legal remedy to which he can resort for the enforcement of his remedy (rights).” C. P., 830.
In the case of Sommierville, 111 La., 1015, the Court said: -“Nor will the writ be granted when the relator has another adequate remedy.”
See also, 106 La., 427; 37 A., 589 (592).
We said that the relator had ample relief guaranteed to him by Article 868 of the Code of Practice, authorizing him to sue in his own name, and that therefore he could not call upon the district attorney to champion his rights in the manner pointed out by the Intrusion-Into-Office Act. The correctness of that ruling is the object of relator’s attack in his application for a rehearing.
That part of the Code of Practice treating .on the writ of quo warranto is entitled: “ Of the mandate to prevent usurpation of office.”
It begins with Article 867 which says: “This is an order rendered in the name of the State by a competent *189 'Court, and directed to a person who claims or usurps an office in a corporation, inquiring by what authority he claims or holds such office. ’ ’
Article 868: “‘This mandate is only issued for the decision of disputes between parties in relation to the offices in corporations -as when a person usurps the character of mayor of a city, and such like. ’ ’
“With regard to offices of a public nature, that is, which are conferred in the name of the State by the Governor, with or without the consent of the Senate, or by election, the usurpations of them are prevented and punished in a manner directed by special laws. ’ ’
C. P., 869: “A mandate to prevent the usurpation of an office in a city or other corporation may be obtained by any person applying for it, and the party to whom it is directed must make his answer in writing within the time allowed by the Court, and state the authority under which he exercises his office. ’ ’
There is no doubt that the position of “police juror” is an ‘ ‘ office. ’ ’
Our Supreme Court in the case of State vs. Theus, 114 La., 1103, has said: ■ “A public office is a charge of trust conferred by public authority for a public purpose, the duties of which involve, in their performance, the exercise of some portion of sovereign power, whether great or small. A public officer is an individual who has been elected or appointed by law, who has a designation or title given .to him by law, and who exercises the functions concerning the office assigned to him by law. ’ ’ 16 A., 400; 70 U. S., 93.
It is also beyond question that “a police jury” or “a parish” is a “corporation.”
Article 427 of the Civil Code defines a corporation to be “an intellectual body, created by law, composed of in *190 dividuals united under a common name, the members of which succeed each other, so that the body continues always the same, notwithstanding-the change of the individuals who compose it, and which, for certain purposes, is considered as a natural person.”
Art. 429: “'Corporations are of two principal kinds; political .and private. Political corporations are those which have principally for their object the administration of a portion of the State, and-to whom a part of the powers of government is delegated to that effect. ’ ’
This definition fits a ‘ ‘ parish ’ ’ like a blanket.
All that portion of the County of Orleans above the Nun’s Plantation (Constitution of 1812, Sec. 10) was carved out to form the .Parish of Jefferson. Act of 1825. page 108. Provision was made for the election of two: >Te members of the police jury and their powers and duties were defined.
Acts 1813, p. 154, Sec. 5; Acts 1834, p. 15; Acts 1842, p. 188; Acts 1884, p. 119.
These powers have all for their object the .administration of the affairs of the parish. They have been amended, but .are substantially reproduced in Section 2743 of the Revised Statutes of 1870..
Article 249 of the Constitutions of 1879 and 277 of 1893 and 1913 provide: “That the General Assembly may establish new parishes which shall be bodies corporate, etc.”
In 29 Cyc., p. 1683, Verbo Parish, we read: “In its primary sense a sub-division of a State which is denominated in the books and'known in the law and in the decisions as a quasi or involuntary corporation possessing some corporate functions and attributes. ’ ’
*191 In 52 A., 429, the Supreme Court said: “A parish is an involuntary corporation vested with a portion of the political powers of the State, etc. ’ ’
The Latin word “parish” is but another name for-the English word “county.-” In Mount Pleasant vs. Beckwith, 100 U. S., 524, the Supreme 'Court of the United States said: “Counties, cities and towns are municipal corporations created by the authority of the Legislature, etc.” To the same effect are 92 U. S., 308 and 93 U. S., 114; 4 Wheaton, 316.
As used in Article 85 of the Constitution for the purposes of appeals from judgments maintaining fines imposed by “municipal corporations” this word includes “parishes.”
State vs. Hagan, 136 La., 869; 30 A., 1244; 32 A., 278; 40 A., 340; 41 A., 53 (55).
In Hoffpaner vs. Wise, 38 A., 704 and Police Jury vs. Mayor, 38 A., 630, the Supreme Court said that a “police jury” was a corporation.
Justice Fenner speaks of parishes as corporations in 33 A., 449.
So does Justice Breaux, 45 A., 392; also 11 A., 631; also 6 A., 176.
‘ ‘ The Police Jury of the Parish of Ouachita is a political or civil corporation created for the purpose of managing the affairs of-the parish. It can sue and be sued.” 3 R., 197; 1 R., 391.
In Lisso vs. Parish, 29 A., 590, the Supreme Court said: ‘£ Police juries are political corporations, etc. ’ ’
In State, ex rel., Wortham vs. Montgomery, 25 A., 139:
“ Police jurymen are the officers of a political corporation, etc.”
*192 “Police juries” are civil corporations and may sue and be sued. 7 Martin, 17; 1 Rob., 391; 3 Rob., 196.
In order to put beyond controversy the tact that the article applied also to political or municipal corporations, the article gives the example: “as when a person usurps the character of mayor of a city, .and such like. ’ ’
There is no doubt that the words “such like” mean “•other officers” 'of the corporation, whatever their appellation may be. There is no difference in principle between the duties and functions of a mayor, councilman, alderman or commissioner.' The difference is only in the name. Their duties and those, of “police jurors” of a parish are the same. They are all officers of the corporation or municipal officers.
“In a strict and proper sense a parish or municipal officer is an officer of a parish or municipality representing the Parish or City, exercising powers belonging to the city or parish, and binding them by -his acts within the scope of his authority. ’ ’ Lamantia, 33 A., 449.
“The recorders of the City of New Orleans were and are municipal officers and not parish officers, although created by the Legislature, and provided for in the Constitution of the State.”
State vs. Goff, 135 La., 342 ; 46 A., 834; 10 A., 420.
Because these recorders enforce municipal ordinances and not State laws.
“The duties of State officers concern the State at large or the general public, although exercised within defined territorial limits, the functions of municipal officers relate exclusively to the particular municipality.”
109 L., 846.
The public administrator is a State officer because he executes the laws of the State; he derives no authority *193 from the Parish or from its people; he has no connection with the city government, etc. Wilson vs. Wiltz, 32 A., 688.
The member of a municipal council is not a State officer. State vs. Taylor, 44 A., 783 (785).
“In the Constitution of 1852 there was a similar provision, and it was held by this Court that >a “police juryman” was not an officer (of the State) within the intendment of Article 122 “prohibiting the holding at the same time of more than one civil office. ’ ’ State vs. Taylor, 44 A., 785; 15 A., 597, Voorhies vs. Fournet.
“Since then, in recent years, (Act 37 of 1880) police juries have been made State officials by legislative enactment. They are appointed by the Governor and our decrees have recognizd them as such, and in 29 A., 948, we held that the acceptance of the office of “police juror” by one holding the office of jury commisioner, vacated the latter officer.’’ 44 A., 785.
But since police jurors have again been made elective by Act 161 of 1894 their character of parish. officer has returned to them.
.It has been decided that the proceeding by quo warranto under the Code of Practice is the proper proceeding to test the rights of an alderman to his office. Reynolds vs. Baldwin, 1 A., 162.
In Terry vs. Stuffer, 17 A., 306, it was said that the registrar of voters was not an officer of the corporation, but a State officer, and therefore his rights to the office could not'be tested by quo warranto.
In State vs. Kohnke, 109 La., 838, it was held that the Sewerage and Water Board was a corporation and that quo warranto under the 'Code of Practice was the proper remedy to test the right of certain persons claiming *194 membership of the board. It was stated in that case on page 845:
“Since the writ of quo warranto does not issue to State officers, it becomes necessary to determine whether this board is an agency of the State or of the. City of New Orleans ? ”
The Court came to the conclusion that the members of the board were officers of the corporation and not State officers and maintained the writ.
But it is contended that the Articles of the Code of Practice on the subject of quo warranto have been repealed in so far as the contestation of “any public office or franchise within this State” is concerned, by Act 156 of 1868, p. 199, now Section Revised Statutes 2593 to 2605, which reads .as follows:
Act 156 of 1868, p. 199:
Section 1: “That an action by petition may be ‘brought before the proper District Court or.parish Court by the district attorney or district attorney pro tempore, and for the Parish of Orleans by the at-' torney general or any other person interested, in the name of the State, upon his own information or upon the information of any private party against the party or parties offending in the following cases: First: When any person shall usurp, intrude into or unlawfully hold or exercise any public office or franchise within this .State, or, etc. ’ ’
Section 2: “That in the cases mentioned in the foregoing'section it is hereby made a duty of the district attorney or district attorney pro tempore of the parish in which the case arises, and for the Parish of Orleans by the attorney general, to bring action against the offending party or parties, when so reonired to do.”
*195 Section 11; “That all laws or parts of laws in this State touching on the subject of quo warranto, conflicting directly or indirectly with any of the provisions of this act be, and the same is hereby repealed.”
This act contains no express repeal of the articles of the Code of Practice on the subject of quo warranto, Articles 867 to 873; only such laws on the subject as conflict, with any of the provisions of the act are repealed. The repeal of the Articles of the Code would therefore be by implication.
Repeals by implication are not favored by the law. La., 168; H. D., 788, No. 4; 110 La., 184; 45 A., 251; 24 A., 155.
‘ ‘ The repeal by a statute of all inconsistent laws does not repeal laws on the same subject which are not inconsistent, unless the latter law provides for the repeal of all laws on the same subject. There must be positive-enactment, or clear repugnancy between the provisions of two laws, in order for one to repeal the other. ’ ’
Bank of Lecompte, 1.25 La., 844.
“They should if possible be considered and construed together and their differences reconciled.”
44 A., 613.
‘ ‘ When laws in pari materia are to be interpreted, that construction is to be preferred which will give effect to all their provisions, for the reason that the law does not favor repeals by implication. ’ ’
16 A., 350.
In the case under consideration there are other reasons for applying the above rules with strictness.
*196 Under the Intrusion Act the State lends the ministry of its officers and its privileges as a litigant in its own Courts to assist a claimant for office. Such a privilege ■will not be recognized unless it is clearly conferred.
‘ ‘ This use of the name of the government with all its privileges and prerogatives, in the prosecution of individuals for the benefit of other individuals, without sanction of law must be discountenanced by this Court. ’ ’
U. S. vs. Union Bank, 8 A., 388.
Under another- view, of the case, the Constitution of the State provides that all Courts shall be open, and every-person for injury done him in his right shall have adequate remedy by due process of law. The Intrusion Act abridges the right of the claimant for office in the exercise of his remedy by forcing him to act through another who may only reluctantly do so. The right of the citizen to pursue his claim in his own name must b.e maintained unless there is -a law which clearly controls him.
We think we make a sound application of the quo warranto law contained in the Code of Practice and the Intrusion-Into Office Act embodied in the Revised Statutes by interpreting them together and reconciling their apparent differences by holding that the Code of Practice is still the law and applies to all disputes between claimants to office in corporations, political and private, while the Revised Statutes prescribe the rules to be followed in suits relative to contestation of all other offices.
We could not come to a different conclusion without disregarding the opinion in State vs. Kohnke, quoted ■above.
Opinion and decree, December 20th, 1915.
Our original judgment will therefore remain undisturbed, and it is hereby reinstated.
Former decree reinstated.