## H. Mary Crawford *v.* Abner Pyle and Thomas B. Brown, trading as Pyle & Brown, Appellants.

190     263
20 SC 585
190     263
24 SC ²509

*Principal and agent—Trial—Review.*

In an action upon a guaranty alleged to have been made by defendants' agent, where the defendants at the trial deny the guaranty and permit the trial judge without objection to assume in his charge that the authority of the agent was not disputed, the defendants on appeal will not be permitted to allege such assumption as error.

*Statute of frauds—Guaranty of the debt of another.*

Where a firm of private bankers have in their possession a number of farm mortgages with blank assignments from the mortgagee, a loan company, of which one of the firm is the president, a parol guaranty given to a purchaser of the mortgages by the firm, is not a guaranty of the debt of another within the statute of frauds.

*Guaranty—Mortgage—Foreclosure—Record.*

Where private bankers give a guaranty to a purchaser of farm mortgages on lands in a distant state, and subsequently institute foreclosure proceedings, and without the purchaser's knowledge or consent buy in the lands for him, and receipt on the record for him, the record of the foreclosure proceedings does not affect the obligation of the bankers as guarantors of the debt. In such a case the record determines only that the mortgagor owed the amount for which he had pledged his land; it determines nothing between the parties to other contracts guaranteeing the payment of the money unless they were by their own consent parties to that suit.

*Principal and agent—Guaranty—Evidence—Question for jury.*

In an action upon an alleged guaranty given to a purchaser of farm mortgages, the case is for the jury where the evidence for the plaintiff tends to show that the agent of the vendors went to the plaintiff and solicited her to buy the mortgages and orally guaranteed them, but the evidence of the plaintiff as to the guaranty is directly contradicted by the agent.

Argued Feb. 6, 1899. Appeal, No. 161, Jan. T., 1898, by defendants, from judgment, of C. P. Chester Co., Aug. T., 1896, No. 111, on verdict for plaintiff. Before STERRETT, C. J., GREEN, McCOLLUM, DEAN and FELL, JJ. Affirmed.

Assumpsit on a guaranty. Before BUTLER, J.
The facts appear by the opinion of the Supreme Court.

The court charged in part as follows:

The plaintiff brings this suit in an endeavor to recover from the defendants the sum of $1,600, with interest from May 1, 1889, alleging that that amount is due upon a security which she bought of the defendants in the fall of 1889, which, she alleges, they guaranteed, which she appears to have placed in their hands for collection in the fall of 1891, and on account of which, she tells you, she has never recovered anything.

The first question that you will be called upon to determine is, did the defendants guarantee this loan? If they did not, that is the end of this case. If they did, then you will pass to the second question, has the plaintiff had satisfaction or discharge of her claim so as to relieve the defendants, if they did guarantee?

You will first take up the question, did the defendants guarantee this security. The burden is upon the plaintiff to satisfy you that they did. It is not for the defendants to show you that they did not guarantee. It is for the plaintiff to satisfy you that they did guarantee this loan. I need not say that an undertaking of this kind, a guaranty of a loan of this size is a serious and solemn contract and undertaking, that it is usually evidenced by a writing, and that where the effort is to prove that an oral contract of guaranty has been made, under such circumstances it ought not to be found unless the evidence fully and entirely satisfies you that such a contract was made.

Now, there was no such contract made; there was no guaranteeing of the loan, unless Sumner Whitson as agent for the defendants guaranteed it. [I do not understand the authority of Sumner Whitson to be questioned,] [13] but did Sumner Whitson guarantee this loan? Did he pledge Pyle & Brown, the defendants, to a guarantee of this obligation?

[Now in our judgment the plaintiff has had no acquittance

or discharge of her claim that would relieve the defendants if they guaranteed this loan, unless it appears that she authorized the land upon which the mortgage was a lien to be bought in under the foreclosure proceedings in her name for her claim. There cannot be any doubt, under all the evidence in this case, that in the fall of 1891 the bond and mortgage were placed in the hands of the defendants at their instance with a view to collecting the moneys due. We do not think, however, that this circumstance would interfere with the defendants' obligation of guaranty, or would authorize them, without more, to proceed to foreclose and buy in the land in the name of the plaintiff for her claim. If you find that the defendants guaranteed this loan, that at their instance it was put into their hands for collection, then, in the judgment of the court, it was their duty to collect the money due this plaintiff. If they could not collect it, it was their duty to pay the loan themselves, because they had guaranteed it. She had a right to look to them, and when she placed, at their instance, the security in their hands for collection, I repeat, in the judgment of the court, it was their duty to make and collect the money for her or pay her themselves. They had no right, without more appearing, to buy in the land and hand that over in discharge of their obligations. If it became necessary to buy the land to avoid a loss it was their business to buy it. She was under no obligations to do so. Therefore we say to you that if you find this guaranty was made, as alleged by the plaintiff, the defendants are liable, unless you are satisfied that the plaintiff authorized this land to be bought in for her and her claim to be bid upon it. The defendants say that she did authorize this, and they seek to establish the fact by producing the records of the foreclosure proceedings as they transpired in Kansas, and they say that among those records is what purports to be a receipt, executed by the plaintiff here, for the debt and interest due upon this loan, acknowledging that she has received the full debt and interest. We say to you that if the plaintiff executed such a receipt as that, she cannot recover in this case, because the execution of a receipt of that kind would be conclusive proof that she did authorize the land to be bought in, and that she did accept it in satisfaction of the debt and interest, but whether or not she did execute such a receipt we submit to you. This record establishes that there is

there, with the records in Kansas, a paper, apparently her receipt, a paper purporting to be her individual receipt. If it is her receipt she cannot recover in this case. If it is not, and you find a guaranty, in our judgment she can. The defendants contend that it must be her receipt; that it would not be there unless it was her receipt; that you are not to assume forgery; that, in view of the fact that the procedings were authorized, and that this paper appears in connection with those proceedings, every presumption is in favor of the honesty and validity of that purported receipt. They further argue that it is much fairer to conclude that she is mistaken when she says she never executed such a receipt, than that somebody has dishonestly or improperly made it and placed it there. The plaintiff, on the other hand, contends that she never did sign such a receipt; that she never authorized the purchase of this land for her claim; that she did not even have knowledge of the foreclosure proceedings. As to the fact that she did not have knowledge of the foreclosure proceedings, she is contradicted by the testimony of Mr. Brown, and you have the testimony on one hand and on the other as to that fact. You will have to determine, if you reach this feature of the case, whether she did execute that receipt. Thus you see there are two questions. First, has the plaintiff fully and to your entire satisfaction demonstrated that these defendants guaranteed this loan? If not, you go no further, your verdict will be for the defendants. If so, then the plaintiff is entitled to recover, unless she authorized the purchase of the land in her name for the debt, and that raises, as we recall the testimony, the question whether or not she executed the receipt. We recall no other evidence in the case tending to show that she authorized the purchase of the land in her name unless it be found in that receipt. [2–10]

*Errors assigned* among others were (2–10, 13) above instructions, quoting them.

*Thomas W. Pierce* and *Alfred P. Reid*, for appellants.—The acts of a servant bind his master only when done in the course of the business committed to him or within the scope of an authority specially delegated. It is no part of the business of a clerk in a store to borrow money and draw bills or notes for it

in the name of the firm: Kerns v. Piper, 4 Watts, 222; Hays
v. Lynn, 7 Watts, 524; Moore v. Patterson, 28 Pa. 505; Hough
v. Doyle, 4 Rawle, 291; Seiple v. Irwin, 30 Pa. 513; Hannay v.
Stewart, 6 Watts, 487.

The assignment of a bond is not a guaranty. When the as-
signor has dealt fairly he is done with the bond and all respon-
sibility arising from it: McNamara v. Lloyd, 19 Pa. 130; Flynn
v. Allen, 57 Pa. 482.

The question whether each particular case comes within the
statute or not depends, not on the consideration of the promise,
but on the fact of the original debtor remaining liable, coupled
with the absence of any liability on the part of the defendant
or his property, except such as arises from the express promise:
Nugent v. Wolfe, 111 Pa. 471; Maule v. Bucknell, 50 Pa. 39;
McKinney v. Snyder, 78 Pa. 497.

A parol contract of guaranty that a third party will pay his
note, the amount being over twenty dollars, cannot be enforced
because of the act of assembly of April 29, 1855, requiring an
agreement or memorandum in writing, or a note thereof, to bind
one to answer for the debt of another of that amount: Dutton
v. Pyle & Brown, 7 Pa. Superior Ct. 126; Jack v. Morrison, 48
Pa. 113; Townsend v. Long, 77 Pa. 143; Riegelman v. Focht,
141 Pa. 380; Elkin v. Timlin, 151 Pa. 491; Temple v. Baker,
125 Pa. 642; Dougherty & Co. v. Bash, 167 Pa. 429; Schafer
v. Bank, 59 Pa. 150; Clark v. Partridge, 2 Pa. 13.

If an express contract is reduced to writing, the writing itself
is exclusive evidence of the relations of the party: Fisher v.
Diebert, 54 Pa. 460; Heebner v. Worrall, 38 Pa. 376; Connel-
logue v. English, 8 W. & S. 11; Roth v. Miller, 15 S. & R. 100;
Miller v. Fichthorn, 31 Pa. 252; Fox et al. v. Foster, 4 Pa. 119;
Cummings v. Antes, 19 Pa. 287; Edelman v. Yeakel, 27 Pa.
26; Maule v. Pleiss, 6 W. & S. 381; Leebrick v. Lyter, 3 W.
& S. 365; Lloyd v. Farrell, 48 Pa. 73.

Where the charge as a whole tends to mislead the jury it is
error: Penna. R. R. Co. v. Berry, 68 Pa. 272; Seigle v. Lou-
derbaugh, 5 Pa. 490; Clay v. Irvine, 4 W. & S. 232; Garrett
v. Gonter, 42 Pa. 143.

If it appear by the record that the plaintiff has no cause of
action this Court will reverse the judgment in his favor, although
the point may not have been made in the court below or as-

signed for error: Northumberland County Bank v. Eyer, 60 Pa. 436; Maher v. Ashmead, 30 Pa. 345; Del. Div. Canal Co. v. McKeen, 52 Pa. 117; Com. v. Hoffman, 74 Pa. 105; Adams v. Betz, 1 Watts, 425; Hoffman v. Coster, 2 Whart. 453; Wyoming Mfg. Co. v. Mohler, 1 Mona. 622; Hoffer v. Wightman, 5 Watts, 205; Wheeler v. Winn, 53 Pa. 122; Shaffer v. Kintzer, 1 Binney, 537; Insurance Co. v. Seitz, 4 W. & S. 273; Malson v. Fry, 1 Watts, 433; Frankstown Twp. Road, 26 Pa. 472; Selin v. Snyder, 7 S. & R. 166; Benton v. Burgot, 10 S. & R. 240; McPherson v. Cunliff, 11 S. & R. 422; Clark v. Depew, 25 Pa. 509; Otterson et al. v. Middleton, 102 Pa. 78; Ogle v. Baker, 137 Pa. 378; Wetherill v. Stillman, 65 Pa. 105; Cochran v. Sanderson, 151 Pa. 591.

The record of a court suit is admissible in evidence as tending to show a fact wholly collateral to the issue in trial in that cause between persons who were or were not parties: 20 Am. & Eng. Ency. of Law, 498; Boro. of York v. Forscht, 23 Pa. 391; McMichael v. McDermott, 17 Pa. 353; Nugent v. Phila. Traction Co., 183 Pa. 142.

*W. S. Harris,* for appellee.—The omission of a judge to charge on a particular aspect of the case, when not asked, is not error: Bain v. Doran, 54 Pa. 124; Caldwell v. Holler, 40 Pa. 160; Newman v. Edwards, 34 Pa. 32; Fox v. Fox, 96 Pa. 60; Humes v. Gephart, 175 Pa. 417; Way v. Martin, 140 Pa. 499; Mundorff v. Wickersham, 63 Pa. 87; Keough v. Leslie, 92 Pa. 424; McNeile v. Cridland, 168 Pa. 16; Wheeler & Wilson Mfg. Co. v. Aughey, 144 Pa. 398.

No question was raised in the court below as to the effect of the statute of frauds and perjuries on this contract. The contract would not be void by reason of the statute, but simply incapable of being proved orally if such evidence is objected to: Lawson on Contracts, secs. 76 and 82; McClure v. Otrich, 118 Ill. 320; Malone v. Keener, 44 Pa. 107; Milks v. Rich, 80 N. Y. 269; Bruce v. Burr, 67 N. Y. 237; Darst v. Bates, 95 Ill. 493; Bailey v. Marshall, 174 Pa. 602; Russell v. Church, 65 Pa. 9; Stephen's Digest of the Law of Evidence, 162, note 2.

The record of the foreclosure proceedings does not affect the guaranty: Coffey v. White, 14 W. N. C. 108; Jones v. Martins, 13 Pa. 614; Otterson v. Middleton, 102 Pa. 78; Jackson v.

Summerville, 13 Pa. 359; Cochran v. Eldridge, 49 Pa. 365; Baxley v. Linah, 16 Pa. 249.

OPINION BY MR. JUSTICE DEAN, March 13, 1899:

The defendants, in the year 1889, carried on in West Chester the business of selling Kansas bonds and mortgages to investors. The plaintiff, Mrs. Crawford, lived at Atglen, a short distance from West Chester; she was a woman of some means, which fact was known to defendants, although they had no personal acquaintance with her; the family of their chief clerk, Sumner Whitson, also resided in Atglen, and plaintiff had an acquaintance with him. In the latter part of October, 1889, defendants sent Whitson, their clerk, to Mrs. Crawford, to solicit her to purchase Kansas mortgage bonds. When he called upon her, it was as the agent of defendants to make sale of mortgages then in their possession, and of which they were ostensibly the owners. He showed to her Kansas bonds and mortgages, and praised their merits; she sums up the interview thus: "Well, when he showed them to me, I told him I didn't know anything about a mortgage: I would have to depend upon their words for the loans or mortgages, and he was very enthusiastic over it; he told me that they were as good as gold, and that they would guarantee them, and there was a person present who asked if he knew what he was talking about, and he said he did, for Thomas Brown was then in Kansas . . . . I told him I was not prepared to take at that time." About ten days after, plaintiff wrote to defendants for a list of the loans Whitson had exhibited to her, and they sent it; she selected two mortgages with accompanying coupon bonds, one on land in Kansas, Carlisle mortgagor, in sum of $1,600, the other on land in same state, in which Ellington was mortgagor, in a like sum, each bearing interest at seven per cent. They were to the Southern Kansas Mortgage Company, as mortgagee, and had indorsed on them an assignment in blank by the company. The plaintiff called upon defendants at their office in West Chester, November 7, following, paid over her money and received the securities. The money was paid to Brown, one of defendants, and he handed to her the mortgages. She also had a conversation at the same time with Pyle, the other defendant, who advised her to sell Pennsylvania railroad bonds and other securities she

had, which were bringing but a low rate of interest, and buy more Kansas mortgages, which would yield seven; but she does not seem to have acted on this last advice. In that conversation, Pyle said: " We will guarantee them," but her testimony does not clearly indicate whether this had reference to the first or to the new purchases he was advising her to make. There was a written guaranty of the mortgages indorsed on them by the mortgagee, the Kansas Mortgage Company, of which Brown was president. There was default on the first instalment of interest on the Carlisle mortgage; it was foreclosed in the Kansas courts, the land sold at sheriff's sale, and from the record, purchased by plaintiff on a bid equaling her debt. Of all these proceedings plaintiff denied knowledge, alleging they were wholly at the instance of defendants or of the mortgage company, and that she was in ignorance of them. Having received no money on the Carlisle mortgage, and denying that she was a purchaser at the sheriff's sale, she brought this suit against defendants as guarantors.

Defendants denied positively the oral guaranty, and this was the principal issue in the trial in the court below. Plaintiff testified to the guaranty, and that, relying on it, she bought the Carlisle mortgage; Whitson, Brown and Pyle, denied it. The court submitted the conflicting evidence to the jury, thus:

" The first question that you will be called upon to determine is, did the defendants guarantee this loan? If they did not, that is the end of this case. If they did, then you will pass to the second question, has the plaintiff had satisfaction or discharge of her claim so as to relieve the defendants, if they did guarantee?

" You will first take up the question, did the defendants guarantee this security? The burden is upon the plaintiff to satisfy you that they did. It is not for the defendants to show you that they did not guarantee. It is for the plaintiff to satisfy you that they did guarantee this loan. I need not say that an undertaking of this kind, a guaranty of a loan of this size, is a serious and solemn contract and undertaking; that it is usually evidenced by a writing, and that where the effort is to prove that an oral contract of guaranty has been made under such circumstances it ought not to be found unless the evidence fully and entirely satisfies you that such a contract was made.

" Now, there was no such contract made, there was no guaranteeing of the loan, unless Sumner Whitson as agent for the defendants guaranteed it. I do not understand the authority of Sumner Whitson to be questioned, but did Sumner Whitson guarantee this loan? Did he pledge Pyle & Brown, the defendants, to a guaranty of this obligation? "

There was a verdict for plaintiff, and defendants appeal. The greater part of the charge is assigned for error. It, however, follows fairly and strictly the two interrogatories propounded by the court, as we have quoted them. The answers to both depended on findings of fact from contradictory evidence. Although the only positive testimony as to the guaranty was that of plaintiff herself, and this was denied by Whitson, still there were some circumstances that lent color to her statement. She did not call upon defendants and seek to purchase ; she had no acquaintance with them ; her money was already invested ; they sent their agent, who could reach her, to solicit·her to buy their wares, exciting her cupidity by placing before her the high rate of interest. Brown, one of defendants, was president of the company which furnished the West Chester partnership the mortgages for sale ; when she called upon them with her money, and Pyle sought to induce her to sell additional securities and buy more Kansas mortgages, while he may not have expressly guaranteed the Carlisle mortgage, he did say, they would guarantee such additional purchases ; after default, she wrote them, asserting their guaranty, and they made no reply. We do not see how the court could do other than submit the evidence on this question of fact to the jury. If the verdict was against the manifest weight of it, a new trial should have been granted ; but the opinion on the motion for a new trial indicates no dissatisfaction with it.

As to the point made by appellants, that no sufficient evidence of authority was given by defendants to their agent to make the guaranty, there was evidence from which the jury might have inferred such authority, and if that point had been raised at the trial it would have doubtless been fairly tried and proper instructions given ; but defendants raised no such point, and asked for no instructions upon it. They rested their case in this particular on a denial of the guaranty. True, Whitson testified he had no authority from his principals to give a guar-

anty, but this was merely incidental, and to add probability to his statement that he had given none. When plaintiff closed her evidence, defendants moved for a nonsuit, but not because authority had not been shown in the agent to guarantee the mortgage. The trial proceeded wholly on the other grounds, and that the course of defendant misled the trial judge is shown by this language in the charge: " I do not understand the authority of Sumner Whitson to be questioned, but did Sumner Whitson guarantee this loan?" If, in thus assuming a most important fact to be undisputed, the learned judge was mistaken, it was the imperative duty of defendants' counsel to call his attention to it at the close of the charge. Nothing was said; we are asked now to review and pronounce on an error participated in by appellants themselves. Such irregular practice, if countenanced, would soon practically turn this Court into one of original jurisdiction.

As to the point raised, that the guaranty was of the debt of another, and therefore within the statute of frauds, this was neither pleaded of record nor raised at the trial. If it had been, there was sufficient evidence to warrant the jury in finding that defendants were interested in the debt guaranteed; Brown was president of the company mortgagee and partner of the firm holding and offering for sale large numbers of the mortgages. They had them in their possession, with blank assignments by the company; ostensibly, by the writings, they were the owners, as much so as the holder of a certificate of stock indorsed in blank, and who offers it for sale. As the evidence stood, they undertook to answer to a proposed purchaser for the value of their own chose in action to effect a sale of it. And this has been our construction of the statute from Malone v. Keener, 44 Pa. 107, to Bailey v. Marshall, 174 Pa. 602.

It is further argued that the record of the Kansas courts, showing nominally that plaintiff foreclosed the mortgage, bought the land at sheriff's sale, and receipted for the face of the judgment, is conclusive evidence of the discharge of the original mortgage debt by payment to her, and therefore the obligation of the guarantors is at an end. This point gives too large a scope to the effect of a judicial record. As between the legal parties to that suit, it is conclusive until set aside by the court wherein the proceedings were had; the mortgagee has no fur-

ther claim against the mortgagor as to the land described in the mortgage; but it conclusively settled no contention between parties to contracts collateral to the mortgage.    The plaintiff testified positively that she was not a party to the foreclosure, and did not know of it; that she did not purchase, nor did she authorize any one to purchase for her and in her name; that she gave no receipt to the sheriff or other officer; that defendants asked her for the mortgage for purpose of collecting the money from the mortgagor; that, assuming they, as guarantors, had a right to it for that purpose, she put them in possession of it, and that was the extent of her knowledge on the subject.    If this were believed by the jury, and the court fully and fairly submitted the question to them, the record did not affect the obligation of defendants as guarantors to her of the debt.    The exemplification of the record shows the real legal plaintiff to be the Southern Kansas Mortgage Company; after so stating, the præcipe directs the clerk of the court to issue summons H. Mary Crawford, plaintiff, against John A. Carlisle and wife, defendants.    The equitable assignee of the mortgage is made the legal plaintiff in the summons.    In this state, the mortgagee would necessarily have been plaintiff, and the equities of the assignees would have been adjusted after judgment fixing the amount due.    No adjudication of them would have been permitted in the issue between mortgagor and mortgagee.    But, giving the record its full legal effect, the judgment only determined that the mortgagor owed the amount for which he had pledged his land; it determined nothing between the parties to other contracts guaranteeing the payment of the money, unless they were by their own consent parties to that suit.    The jury has found as a fact that plaintiff was not really a party to that suit, and knew nothing of it.    Therefore, it cannot bar her suit on her contract of guaranty with other parties.    As to any equity defendants may have, entitling them to a conveyance of the land from plaintiff, that, the court has full power to enforce by its control of execution on this judgment.

An examination of the whole case discloses no error calling for a reversal.    The judgment is affirmed and appeal dismissed at costs of appellants.