## Kress House Moving Company v. Brennan, Appellant.

*Contracts—Statute of frauds—Promise to pay debt of another—Separate consideration.*

In an action to recover the balance due on a building contract, it appeared that the plaintiff was a subcontractor who had undertaken to move a house for the defendant's contractor. The latter having failed before the moving of the house was finished, a meeting was called of the various subcontractors and material men, at which it was alleged that the defendant made a separate and distinct promise with the plaintiff to be responsible for the cost of moving the house, if he would complete his contract.

The defense was advanced that this was nothing more than the verbal promise to pay the debt of another, and therefore contrary to the provisions of the statute of frauds. *Held,* that as the general contractor's default excused further performance by plaintiff, and as there was evidence of defendant's promise to pay in consideration of plaintiff's completion of the work a verdict for the plaintiff will be sustained.

*Courts—County Courts of Allegheny County—Appeal—Act of May 5, 1911, P. L. 198.—Act of May 23, 1913, P. L. 310.*

A party who has had a jury trial under the Act of May 5, 1911, P. L. 198, as amended by the Act of May 23, 1913, P. L. 310, relat-

ing to the County Court of Allegheny County, is not entitled to an appeal from the county court unless a retrial of the issues of fact is necessary to prevent injustice. The court is to exercise a sound judicial discretion, on due consideration of the relevant matters properly brought before it, and may refuse the appeal, if upon such consideration it is not satisfied that a retrial is necessary to prevent injustice.

Argued April 25, 1921. Appeal, No. 86, April T., 1921, by defendant, from order of C. P. Allegheny County, April T., 1920, No. 2367, refusing to allow an appeal from the county court in the case of Kress House Moving Company Corporation v. James P. Brennan. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Affirmed.

Petition to allow an appeal from the county court. Before SWEARINGEN, J.

The facts are stated in the opinion of the Superior Court.

The court dismissed the petition. Plaintiff appealed.

*Error assigned* was the order of the court.

*Denis Æ. Behen,* and with him *Ralph C. Davis,* for appellant, cited: Tucker v. Bitting, 32 Pa. 428; Haverly v. Mercur, 78 Pa. 257; Eshelman v. Harnish et al., 76 Pa. 97; Russell v. Clark, 7 Cranch 69; Connor v. Stewart, 55 Pa. Superior Ct. 381, 384; Nazareth Foundry Co. v. Beck, 66 Pa. Superior Ct. 238-242; Stouffer v. Jackson, 42 Pa. Superior Ct. 450; Gable v. Graybill, 1 Pa. Superior Ct. 29; Maule v. Bucknell, 50 Pa. 39.

*George J. Shaffer,* for appellee, cited: Weber & Co. v. Bishop, 12 Pa. Superior Ct. 51; Merriman et al. v. McManus, 102 Pa. 102; Arnold v. Stedman, 45 Pa. 186; Crawford v. Pyle & Brown, 190 Pa. 263; Elkin v. Timlin, 151 Pa. 491; Nugent v. Wolfe, 111 Pa. 471; Bailey v. Marshall, 174 Pa. 602; Goodling v. Simon, 54 Pa. Superior Ct. 125.

OPINION BY LINN, J., July 14, 1921:

Plaintiff got a verdict in the county court. Defendant's motion for a new trial having been refused, he filed a petition in the common pleas for leave to appeal to that court and leave was denied. He appeals to this court to review the order of the common pleas.

The rule applicable was stated in an opinion by Judge TREXLER in Keown v. Bunton, 61 Pa. Superior Ct. 220 at 223, to be: ".......a party who has had a jury trial under the Act of May 5, 1911, P. L. 198, as amended by the Act of May 23, 1913, P. L. 310, is not entitled to appeal from the county court unless a retrial of the issues of fact is necessary to prevent injustice;......the court is to exercise a sound judicial discretion, on due consideration of the relevant matters properly brought before it, and may refuse the appeal if, upon such consideration, it is not satisfied that a retrial is necessary to prevent injustice." As the evidence if believed by the jury, is sufficient to sustain the verdict, we may not interfere.

Defendant owned a house which he desired moved, remodeled and otherwise improved. On September 5, 1915, he made a contract with Rodgers Brothers to do the work and they in turn sublet part to subcontractors. To plaintiff, Kress House Moving Company, they sublet the removal of the house for $1,130 "from its old location to a new site......and turn it around and face it a different position from where it was and remodel it and put it in shape for occupancy." Before the general contract was performed, Rodgers Brothers failed and abandoned the work. The witnesses differed as to whether plaintiff, the Kress Company, had fully performed its subcontract when Rodgers Brothers defaulted, but the verdict establishes that plaintiff did not complete performance of its subcontract until after the failure of Rodgers Brothers and then completed it in consideration of the promise made on behalf of defendant to pay their entire account, $1,130.

The statement of claim averred the making of the contract by defendant and Rodgers Brothers and the subcontract by the latter and plaintiff for $1,130; that during performance Rodgers Brothers failed and refused to go on; and "Fifth. That thereafter, to wit, on or about July 14, 1916, at a meeting of the subcontractors of Rodgers Bros. for the said work, called by and held at the office of defendant's attorney in the City of Pittsburgh, the said defendant then and there stated to the said plaintiff that the said defendant was desirous of securing an early completion of the said work so as to get into possession for the purpose of doing business in the said building, and then and there promised and agreed to and with the plaintiff that if plaintiff would proceed with said work and finish the same promptly and secure the architect's certificate as to proper completion of the said work, the said Brennen would pay the amount of plaintiff's contract for the doing of the said work, to wit, the said sum of $1,130. Sixth. Thereafter the plaintiff, relying upon said promise and agreement, and in consideration thereof, proceeded with and finished its said contract, and on September 9, 1916, S. C. Richards & Co., architects for said plaintiff in charge of the said work, duly issued their certificate showing plaintiff's contract for the said work to have been done in accordance with specification prepared by the said architects for the said work......" Those two allegations were denied in the affidavit of defense.

Appellant now asserts that the statute of frauds prohibits recovery in this suit. So far as we can determine, the point was not specifically raised until probably at the argument on the petition for the appeal, if then, for the court below says, "The main contention of the defendant is that the court should not have admitted in evidence the letter written by defendant's attorney calling a meeting, and the promises to undertakings there made. [Objected to because made in defendant's absence and by an architect whose authority was not

shown.] As to the letter, we do not understand that it was offered or used for any other purpose than to show how the meeting was called and who were expected to attend. For those purposes the letter was competent evidence."

The Act of April 26, 1855, P. L. 308, provides: "No action shall be brought whereby to charge......the defendant upon any special promise, to answer for the debt or default of another, unless the agreement......shall be in writing,......signed by the party to be charged therewith, or some other person by him authorized." Appellee asserts that the evidence is that appellant's promise to pay was made to serve and did serve purposes of his own and that appellee completed the work in consequence of the promise, thereby showing a transaction not required to be in writing. Defendant owned the building and was interested in getting it completed. He does not contend that he became guarantor of or surety for Rodgers Brothers, but he denies making any contract whatever with plaintiff. Defendant testified "Mr. Richards, the architect, had the getting ready of the building ......," but he denied Richards' authority on his behalf to promise plaintiff that he would pay its bill. He said the general contractors abandoned the work and that when it became known that they would not perform, his attorney sent a notice (referred to in the quotation made above from the opinion of the court below) to subcontractors, including plaintiff, stating that he had arranged "for a meeting of the people who did work and furnished material for the moving of" his building, to be held at the office of his counsel, and desiring the subcontractors, including plaintiff, to be present. There was evidence that at the meeting defendant said that "'......one of my bartenders is sick this morning. I have to go out and work,' but he said 'I will abide by the decision of the architect and my attorney, pay whatever bills they say is right'; he says, 'I can't stay for the meeting but I will abide by what they say.'" At the

meeting a discussion arose as to performance by the plaintiff of its subcontract and plaintiff was informed by the architect that performance was not completed and that "the building is out of level" and that there were "two small bay windows at the side which have settled somewhat"; that the architect said plaintiff would be paid by defendant like the other subcontractors, and that he would issue his architect's certificate if plaintiff "would finish the work to his [the architect's] satisfaction." Plaintiff's representative went to the site of the work with the architect, who then waived the matter of the leveling of the building but insisted on the correction of the defect in the windows. That was accordingly made and the architect considered the work satisfactory and on September 9, 1916, issued his certificate in the form of a letter to counsel for defendant so stating. The architect denied that he said that defendant would pay the bill; he testified that sometime before July, 1916, the general contractor left the work and "that [the architect] took it up." He agreed that after the July meeting he went to the building with a representative of the plaintiff and took some levels and requested that the defect in the bay windows be corrected. He also states that he issued the so-called certificate stating that the work "has been done according to the specifications prepared by us for that work," without examining the building and on the statement of plaintiff's representative that the corrections desired by him had been made.

If the work plaintiff agreed to do was incomplete as described by evidence offered on its behalf, and Rodgers Brothers, the general contractor, defaulted, plaintiff of course was excused from further performance. The mere fact that it is said that at April term, 1916, plaintiff recovered a judgment against Rodgers Brothers for the amount of this claim is not conclusive in this suit that performance was then complete or that plaintiff did not rely on defendant's promise in finishing the work as the witness said, as requested by the architect and subse-

quently certified; the record of that suit was not offered and we have nothing justifying any inference from the fact.

The evidence was submitted to the jury in a charge concerning which no complaint appears to have been made, nor were any requests for charge presented. Appellant's argument is predicated upon a view of the evidence inconsistent with the record; his proposition is "There was absolutely no reason why Brennen should have made the alleged promise to plaintiff, because its work was completed......" If on July 16th the work was so defective or incomplete that the architect declined to accept it, and if, authorized by defendant, he agreed with plaintiff that defendant would pay the entire bill if plaintiff corrected the defects and completed the work to his satisfaction, and if plaintiff who was then certainly released from further performance by the default of Rodgers Brothers finished the work to the architect's satisfaction in consideration of the agreement that defendant would pay the bill, the evidence justifying such findings by the jury, we are unable to say that there was failure of judicial discretion by the common pleas in refusing the appeal: Nugent v. Wolfe, 111 Pa. 471, 480; Bailey v. Marshall, 174 Pa. 602; Crawford v. Pyle & Brown, 190 Pa. 263.

The order is affirmed.