## George v. Mellinger & Weaver.

*Real estate agents—Oral guaranty—Statute of frauds.*

The Statute of Frauds was not intended to apply to an oral promise to guarantee the liability of a third party when the leading object of the promisor is to subserve some interest or purpose of his own; hence, where a real estate agent, interested in making a sale on which he receives a commission, orally agrees to save a purchaser harmless and guarantees a clear title to the real estate sold to him, such agreement is not within the statute.

Rule for judgment *n. o. v.* for defendant. C. P. Lancaster Co., June T., 1923, No. 50.

*S. V. Hosterman, Charles W. Eaby* and *John M. Groff*, for rule.

*H. Edgar Sherts*, contra.

LANDIS, P. J., Jan. 15, 1927.—The facts in this case are settled by the verdict, and the sole question now before us is whether, under them, the plaintiff is entitled to recover.

On Dec. 12, 1922, Ralph R. George, the plaintiff, went to the offices of Mellinger & Weaver, who were real estate agents in the City of Lancaster, and told Weaver that he wanted to buy a house. Weaver suggested one, No. 1013 North Lime Street, Manheim Township, adjoining the city, and they went out together and looked at this house. George said he would take it, and the terms were agreed upon. The cost of the house was to be $3000, and there was to be a first mortgage of $2000, a second mortgage of $700, and $300 was to be paid in cash. Several nights after that, George came back. Mellinger had drawn an agreement, and it was signed by Earl V. Goldfus and Katharine Goldfus, the owners, and then George signed it and paid Weaver

George *v.* Mellinger & Weaver.

$200 in cash, and gave him a note for $100. He also paid him $20 for the deed, $25 January payment and $9 for insurance. And now comes the dispute between them, which was found by the jury in favor of the plaintiff. Towards the last of December, George moved into the premises and stayed there for several months. No deed was ever given to him or tendered at the time mentioned in the agreement, and the property having been sold at public sale on an execution issued against the owners, he was obliged to move out. He paid $25 on the note, and the balance was met by the defendants. The allegation of George was that, at the time of the sale and the payment of the money, the defendants agreed to save him harmless and protect him from all trouble arising out of the sale. George testified that he said to Weaver: "It would be better, it would be a good idea, for me to get an attorney to look up the title to the property;" to which Weaver responded, "No, sir; you leave it all to me; we will guarantee you a clear title of the property;" that he (George) had "nothing to worry about." George also said: "Don't you think I had better see an attorney, to make sure of this and to get a clear title?" and Weaver responded: "We will give you a clear title of the property; we will get our attorney to fix things up for you." The defendants denied that they had made any such arrangements, and this question was submitted to the jury, who found for the plaintiff. The court charged the jury: "Of course, they were agents, and were doing business, I suppose, as real estate agents usually are, . . . for compensation. . . . Now, unless they specially assumed the responsibility which George says they did assume, then they are not liable; because one who is an agent for another, in transacting business for another, does not make himself personally liable, unless he specially contracts an original liability of that kind. That is the point in this case—whether they did or whether they did not. If they did agree to protect George, and guaranteed a clear title to the property, and failed to make that guarantee good, then they ought to return to George what he lost. If they did not do that, but were merely acting as ordinary agents, then, as I said, they are not liable." The defendants now claim that there should have been binding instructions in their favor.

It is true that a parol promise to pay the debt of another is within the statute of frauds, and a promise to indemnify one if he will go security for a third person is, for this reason, invalid: Nugent *v.* Wolfe, 111 Pa. 471. Mr. Justice Sterrett, delivering the opinion of the court in that case, said: "It is very evident that the statute was not intended to apply except in cases where, in addition to the promisor and promisee, there is also a third party to whose debt or undertaking the agreement of the promisor relates, and not even then, unless the liability of the third party continues. In other words, the agreement, to be within the purview of the statute, must in a certain sense be a collateral and not an original undertaking. Independently of the debt or liability of the third party, there must, of course, be a good consideration for the collateral or subordinate agreement, such, for example, as a benefit or advantage to the promisor or an injury to the promisee. It is difficult, if not impossible, to formulate a rule by which to determine in every case whether a promise relating to the debt or liability of a third person is or is not within the statute; but, as a general rule, when the leading object of the promise or agreement is to become guarantor or surety to the promisee, for a debt for which a third party is and continues to be primarily liable, the agreement, whether made before or after or at the time with the promise of the principal, is within the statute and not binding, unless evidenced by writing. On the other hand, when the leading object of the promisor is to subserve some inter-

est or purpose of his own, notwithstanding the effect is to pay or discharge the debt of another, his promise is not within the statute.

In Bailey v. Marshall, 174 Pa. 602, it was held that: "The Act of April 26, 1855, P. L. 308, which directs that 'no action shall be brought where to charge . . . the defendant upon any special promise to answer for the debt or default of another unless the agreement . . . shall be in writing,' was meant to relieve an alleged guarantor or surety; not to relieve one who had a personal beneficial interest in the assumption."

In Crawford v. Pyle and Brown, 190 Pa. 263, it was held that: "In an action upon an alleged guaranty given to a purchaser of farm mortgages, the case is for the jury where the evidence for the plaintiff tends to show that the agent of the vendors went to the plaintiff and solicited her to buy the mortgages and orally guaranteed them, but the evidence of the plaintiff as to the guaranty is directly contradicted by the agent."

Here, the defendants were interested in this sale. They were real estate agents and received a commission out of the money that was paid by plaintiff to them. There was nothing in the law to prevent them from assuming a personal liability for the performance of the contract, if they saw fit so to do, and the plaintiff having alleged and proven such a contract, it was for the jury to determine whether the testimony so given by him was true. Having found that it was, we see no reason to interfere with their judgment. The rule for judgment non obstante veredicto is, therefore, discharged. Rule discharged.

From George Ross Eshleman, Lancaster, Pa.